**CARSON v. EXCHANGE TRUST CO.,
Adm'r.**

No. 17725.    Opinion Filed Oct. 4, 1927.

(Syllabus.)

**Appeal and Error—Review—Sufficiency of
Evidence in Equity Case.**

The judgment of the trial court in an
equity proceeding will not be set aside on
appeal, unless said judgment is clearly
against the weight of the evidence.

Error from District Court, Tulsa County;
Luther James, Judge.

Action by Usher Carson against Homer
S. Crossman, upon whose death the Exchange
Trust Company, his administrator, was sub-
stituted. Judgment for defendant, and
plaintiff appeals. Affirmed.

C. H. Rosenstein and R. E. Rosenstein, for
plaintiff in error.

Preston C. West, Nathan A. Gibson, Roger
S. Sherman, A. A. Davidson, and Joseph L.
Hull, for defendant in error.

PHELPS, J. The parties hereto will be
referred to as plaintiff and defendant, as
they appeared in the trial court.

Plaintiff brought suit in the district court
of Tulsa county alleging that plaintiff and
Homer S. Crossman entered into a contract
by the terms of which it was agreed that
Crossman should furnish the money to buy
certain lands located in Creek county, Okla.,
and that the same should be sold by the
efforts of plaintiff and that from the sale
price Crossman should be reimbursed for
the purchase price and expenses connected
therewith and that the residue should be
equally divided between plaintiff and Cross-
man. It was further agreed between the
parties that in case the $1,000 of the
purchase price which had been advanced by
Crossman should be forfeited, they should
share the loss equally. Plaintiff alleged that
this contract evidenced a partnership agree-
ment between them, and prayed for an ac-
counting.

After the issues were joined Crossman died
and the Exchange Trust Company was ap-
pointed administrator of his estate and con-
ducted the defense to plaintiff's action. The
cause was tried to the court, and from a
judgment in favor of defendant, plaintiff
prosecutes this appeal.

When the cause was first called for trial
objection was sustained to the introduction
of evidence under the plaintiff's petition, ap-
parently upon the grounds that the cause of
action was barred by the statute of limita-
tions, from which ruling appeal was taken

to this court and the judgment of the trial
court reversed (Carson v. Crossman, 99
Okla. 71, 225 Pac. 947), and it is upon the
question there decided that plaintiff seems
to base his claim for recovery here. An ex-
amination of that opinion, however, shows
that the sole question there decided was that
plaintiff's petition was good as against a
general demurrer, treating the objection to
the introduction of the evidence as a de-
murrer, together with the incidental ques-
tion that the statute of limitation does not
begin to run against a right by one partner
to sue another for an accounting until the
partnership affairs have been entirely closed.
This opinion does not purport to adjudicate
the question that the contract forming the
basis of this lawsuit constituted a partner-
ship agreement, but merely holds that the
petition sufficiently alleged a partnership
agreement to justify the introduction of
evidence thereof.

The record shows that it was conceded
that the lands in question had been sold, and
the only evidence offered at the trial of the
instant case in support of plaintiff's allega-
tions was his testimony that the contract had
been entered into, and the contract itself was
admitted in evidence.

The defendant offered the testimony of but
one witness, Charles Richardson, who testi-
fied that he was present when Crossman de-
livered to plaintiff the following letter:

"Tulsa, Oklahoma,
"November 18, 1912.
"Mr. Usher Carson.
   "Tulsa, Oklahoma.
"Dear Sir:

"You are hereby notified that I do not
now desire to sell the lands covered by our
contract of January 25, 1910, and any au-
thority that you might have had under said
contract to sell said lands is hereby revoked.
   "(Signed)    Homer S. Crossman."

It is one of the contentions of defendant
that no partnership existed between plain-
tiff and Crossman, but that they had a con-
tract authorizing plaintiff to sell the real
estate in question and his compensation for
his services should be measured by an
amount equal to half the profits accruing
from the transaction, and that if no part-
nership agreement existed between them the
present action was barred by the statute of
limitation, the petition not having been filed
until April 25, 1918; in other words, when
Crossman delivered to plaintiff the letter
introduced in evidence on November 18, 1912,
that whatever cause of action plaintiff may
have had then arose.

We find no fault with the authorities cited

by counsel and this court's holding in the former appeal of this case that the statute of limitation does not begin to run against a partner until the partnership affairs have been closed, but the question as to whether a partnership existed was, under the state of the record in this case, a question for the court to determine, and we are at a loss to see how the trial court could have arrived at any other conclusion than the one reached.

In Cecil v. Montgomery, 95 Okla. 184, 218 Pac. 311, where four persons agreed to share equally the profits of a joint venture involving a single transaction, this court held that one of the parties might maintain his action against another who appropriated the entire profits without making the other two parties to the action, thereby holding, at least by implication, that such an agreement did not constitute a partnership.

In Jaques v. Hulit, 16 N. J. L. 38, it was agreed that in consideration of a certain sum of money to be paid by defendants to plaintiffs, defendants should have one-half of the peaches then growing in a certain orchard of plaintiff, and that all the peaches should be marketed together for the benefit of the parties, each party to be at one-half the expense and receive one-half of the benefits accruing thereon. The court there held that if it could be said a partnership existed at all, it was for a special and limited purpose and terminated as soon as the peaches had been marketed. To the same effect was the holding in Burleigh v. Bevin, 48 N. Y. S. 120, when the court said:

"There was no general 'partnership', in the sense in which that word is usually understood. The agreement was simply to share the profits and bear the losses of a single transaction. There were not and could not be any joint debts or mutual accounts to be adjusted. After the sale of the stock nothing remained to be done except to divide the profits or contribute to the losses. * * *"

In the instant case the judgment of the court was general in its nature in behalf of the defendant, and in the light of the foregoing authorities we indulge the presumption, although it is not specifically stated in the record, that the trial court reached the conclusion that no general partnership existed and that the suit, therefore, was not maintainable as a suit for an accounting between partners and for the settlement of mutual accounts, and if it were possible to say that the suit was maintainable upon the theory that Crossman was indebted to the plaintiff for one-half the profits of the sale,

it would be incumbent upon him to show that the property was sold at a profit, and on that subject there is not one word of testimony in the record and, under the holding of this court in Lamb v. Palmer, 79 Okla. 68, 191 Pac. 184, Stone v. Spencer, 79 Okla. 85, 191 Pac. 197, and Wooten v. Lackey, 79 Okla. 141, 191 Pac. 1037, the judgment of the district court must be affirmed.

BRANSON, C. J., MASON, V. C. J., and LESTER, HUNT, CLARK, and HEFNER, JJ., concur.

Note.—See 4 C. J. p. 900, §2869; 2 R. C. L. p. 204; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73.