## BUNTE et al. v. HASLEY.

No. 15954—Opinion Filed Nov. 16, 1926.

Addendum, Dec. 7, 1926.

(Syllabus.)

1. **Trusts—Constructive Trusts—Proof—Parol Evidence.**

In a proper case a court of equity will enter a judgment and decree establishing a contract which rests solely in parol, the establishment of which contract would operate to convert the holder of the legal title to real estate into a trustee for the beneficial owner; but where such a contract is alleged to rest solely in parol and there is no memorandum in writing in any wise evidencing the same, a decree establishing such contract cannot be justified except when plaintiff sustains the burden of establishing the same by clear, decisive, and unequivocal evidence.

2. **Appeal and Error—Review—Findings and Evidence in Equity Case.**

In a cause of purely equitable cognizance

which is presented to this court on appeal from the district court on the question as to whether or not the findings and conclusions of the district court are in accord with the evidence presented to such court, this court will examine all of the evidence to determine whether or not the findings of the trial court are clearly against the weight of the evidence; if such facts are not clearly against the weight of the evidence, the findings of the trial court as to what the evidence shows or fails to show cannot be disturbed.

### 3. Trusts—Devised Land Stamped with Constructive Trust in Favor of Heirs Who Were Induced by Devisee to Abandon Contest of Will.

Where it is made to appear by evidence clear, decisive, and unequivocal that the devisee of real property by acts, words, and conduct led children of the testator to believe that if they desisted from their expressed intention to contest the will they would receive at the death of the devisee as much as they would have inherited from the testator but for the will, and by reason thereof the intended contest was by them abandoned and quitclaim deeds made by them to the devisee in the will to correct errors in the procedure antecedent to the probation of the same, equity will not permit the devisee to gain an advantage by reason of the action of such heirs under such impression so made, and will not permit the devisee to assert that the abandonment of the intended contest of the heirs was without consideration in that they could not have successfully contested the will, but will treat the property, the legal title to which was so acquired by reason of the will, as stamped with a constructive trust to the extent such heirs would have inherited an interest therein but for the will.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Ida Hasley and Hulda Bunte against Theodocia Hasley. On death of defendant, the case was revived in the name of James M. Bailey, executor. Judgment for defendant, and plaintiffs appeal. Affirmed in part; reversed and modified in part.

Elmer L. Fulton and Everest, Vaught & Brewer, for plaintiffs in error.

Thomas G. Chambers, Jr.; Claude Nowlin, and Burford, Miley. Hoffman & Burford, for defendant in error.

BRANSON. V. C. J. Herein is presented error from the district court of Oklahoma county. The plaintiffs in error were the plaintiffs below. The defendant in error was the defendant below. They are referred to as in the district court.

One Huldah Bunte (nee Hasley) filed the original petition in September, 1923. She named Theodocia Hasley and Ida F. Hasley as defendants. Thereafter, by leave of court, the said Ida Hasley changed her position to that of a coplaintiff with the original plaintiff, and an amended petition was filed by Huldah Bunte and Ida Hasley against the defendant, Theodocia Hasley. To this amended petition the defendant pleaded and on the trial the court sustained an objection to the introduction of any evidence on the allegations. Thereupon, the plaintiffs secured leave to amend and filed a second amended petition, and later amended the second amended petition, to which second amended petition, as amended, the defendant pleaded the general issue. admitting only certain specific instruments, copies of which were attached to the second amended petition as amended. In said second amended petition as amended the plaintiffs alleged in substance:

"That the defendant is their stepmother; that one Henry Hasley was their father; that he died in December, 1920; that he left a will in which the plaintiffs were in no wise mentioned; that under said will and the decree of distribution of the probate court thereon, the defendant was vested with the legal title to certain property which the judgment of distribution found to be conveyed in haec verba.

"And it further appearing that the said deceased died testate, leaving a last will and testament, by the terms of which he bequeathed and devised to Theodocia Hasley all the property, both real and personal of which he may die seized. and that said property consists of the following described real estate situated in Oklahoma county, state of Oklahoma: The northeast quarter of section 31 township 13 north, range 3 west, I. M., which was the homestead of the deceased and of Theodocia Hasley, or Mrs. Henry Hasley, executrix; the undivided one-half interest in the northeast quarter of section 30, township 13 north, range 3 west, of the I. M.; the northeast quarter of section 29, township 13 north, range 3 west, I. M. * * *"

An undivided one-half interest in the northeast quarter of section 30, township 13 north, range 3 west of the Indian Meridian, was the separate property of the defendant herein.

It was further in substance pleaded that in 1921. when the said will was filed for probate, the plaintiff Ida Hasley examined the same for the first time, and concluded that it could be successfully contested. and so advised her sister, Huldah. coplaintiff herein; that they had a conversation with the defendant, in which they asserted that the said will could be successfully contested by them; that the defendant entered into

an oral agreement with the plaintiffs that, if they would not contest the said will, she would leave them all the property at her death, not only that which had stood in the name of her husband, but all the property which she personally owned; that thereafter, and sometime before the filing of this suit, the defendant denied that she had ever made such an agreement. The instant litigation followed. The prayer of the plaintiffs in said second amended petition as amended is that the court adjudge and decree that the said alleged oral contract between the plaintiffs and the defendant was made; that the court declare a trust in all of said land in favor of the plaintiffs, and adjudge and decree that the defendant holds the legal title to the same and all her personal property in trust during her lifetime for the use and benefit of the plaintiffs; and, further, that she be enjoined from conveying or mortgaging or in any wise incumbering any of said property, and that a trustee be appointed to collect and conserve the personal property, and "that plaintiffs have such other, further and different relief as may be just and equitable."

Trial was had to the court; the plaintiffs were denied all relief prayed. They assign error here. which can be understood only by a synopsis of the record.

The record discloses that the defendant married Henry Hasley about 1885; that at that time he was a widower, and that the plaintiffs herein were his infant children: that in 1889 they moved from the state of Missouri to Oklahoma Territory and homesteaded 160 acres of land in Oklahoma county, which is referred to in the record as the home place; that by the joint industry of the said Henry Hasley and the defendant they saved some money and purchased two other quarter sections of land above described, an undivided half interest in one of which was owned by the defendant; that the plaintiffs were reared by the defendant; that when they reached the age of about 17, having had educational advantages. they began teaching, returning occasionally to the home of their father and the defendant, their stepmother; that after teaching several years the plaintiff Huldah married one Bunte, and they moved to the state of Nebraska; that the plaintiff Ida engaged in the oil and gas business in Oklahoma City; that Henry Hasley became an invalid, and was unable to even wait upon himself from about the year 1904 or 1905, or 15 years before his death; that the defendant looked after the farms and waited on and took care of her said

husband until his death, the latter part of 1920; that in the meantime the defendant inherited several thousand dollars from a deceased son and several thousand dollars from her deceased father; that after the death of the defendant's husband the plaintiff Huldah and her husband returned from Nebraska to Oklahoma, and made their home with her stepmother at the home place until 1923, shortly before this suit was brought; that about that time, having no one to look after or attend to the farms, the defendant got into communication with one Carson, her step-son-in-law. The said Carson lived in the state of Texas, and the letters she wrote the said Carson were written in the office of the plaintiff Ida and by her. The correspondence resulted in the defendant and plaintiff Ida going to the state of Texas, where the defendant induced the said Carson to abandon his plans on a promise made in the presence of the plaintiff Ida that. if he would move to Oklahoma and onto the farm and assist her, at her death she would leave him the home place, the title to which she had secured by virtue of the will from her deceased husband as set out above. The said Carson did move to Oklahoma county and to the home place of the defendant.

After hearing all the evidence, the trial court made findings of fact and conclusions of law. abbreviated as follows:

"That the plaintiff Huldah was 46 years of age and the plaintiff Ida 42 years of age; that when their father married the defendant they were respectively of the ages of six and two years; that the defendant with her husband in 1889 came to Oklahoma Territory and homesteaded 160 acres of land (herein referred to as the home place). Later he acquired another farm of 160 acres, and subsequently he and the defendant acquired another quarter section; that the plaintiffs continued to live with their father and the defendant until they were about 17 years of age, when they began teaching school; that the plaintiff Huldah, after teaching several years, married, moved to Nebraska, and subsequently returned to the home place, where they lived for several years, and here she remained until January, 1923; that the plaintiff Ida, after teaching school, entered upon a business career and for several years assisted the defendant in her business matters, loaning the defendant's money and making investments for her; that the plaintiff Ida borrowed money from the defendant, and is now indebted to the defendant for money borrowed in the sum of $4,500; that defendant inherited some money from her deceased son and also some money from her deceased father; that Henry Hasley was an invalid for many years before his death. requiring and receiving a great deal of care

and assistance from the defendant; that in 1911 Henry Hasley executed his will, leaving his above-described property to the defendant, and on the same day the defendant executed a will leaving all of her property to her said husband; neither the child of the defendant nor the plaintiffs were mentioned in either will; that when the will was filed for probate in January, 1921. notices were posted that a hearing on the same would be had on January 17, 1921; that notices mailed to the plaintiffs as heirs at law of the deceased, by mistake, erroneously recited that a hearing upon the petition for probate would be had on June 17, 1921; that the plaintiff Ida on examining the said will in the office of the county judge, and discovering that no provision had been made for her and her sister, advised her sister that she thought said will could be successfully contested, and they communicated their idea to the defendant; that one of the plaintiffs testified that the defendant thereupon said: 'If you girls contest this will you will take just what you get; if you do not I am going to leave everything, not only what you could have gotten, your share, but also my portion, everything, the whole estate;' that other plaintiff testified that sa'd defendant said: 'If you contest the will you will take just what you get, if you do not I intend to leave you everything;' that all this was denied by the defendant."

The court further stated in his findings and conclusions:

"The court cannot find from the evidence that the defendant either promised or agreed that the plaintiffs should have any portion of that or of her estate in the event they interposed no objection to the probating of said will, but the court does find that the plaintiffs were influenced in their subsequent course in interposing no objection to probating of the will by the conversation had with the defendant."

While counsel insists that the primary purpose of this suit is to establish the alleged contract, no other conclusion can be reached than that the purpose of establishing the contract is that the same, if so established, shall give rise to a constructive trust as to all the property. both that which had been owned by the testate and that owned by the defendant in her own personal right. There is no sugges'ion that the said alleged contra't was evidenced by any memorandum in writing. but the same rested solely in parol.

It must be conceded. as contended by the pla'ntiffs, that a court of equity in a prop-... a e will by decree establish an oral contract relating to real estate, the result of the establishment of which will be that the real estate be declared to be held in trust for the use and benefit of those with whom the contract was made, but where such contract is alleged to exist solely by reason of oral conversations, the same must be established by evidence clear, unequivocal, and decisive. Miller v. Manny, 91 Okla. 150, 216 Pac. 662; Secrest et al. v. Nobles et al., 97 Okla. 277, 223 Pac. 863; Bernard v. McRay, 89 Okla. 1, 213 Pac. 82.

By this rule of law we examine the record. The plaintiffs insist that their stepmother entered into an agreement the legal effect of which was to deprive her as beneficial owner of the property which she owned in her own right and which the record disclosed at least equalled in value what the plaintiffs would have inherited from the father even had he made no will, and that she would hold not only that formerly owned by their father, one-third of which she would have inherited, but also all her own property, in trust for their benefit. To make it effective they insist that a trustee be appointed to take the control of all of the property from her.

The trial court found there was no such contract made. The question here as to the contract is: Was that finding clearly against the weight of the evidence?

The record discloses that the testimony of the plaintiffs is not in accord. One testified, in substance. that defendant said plaintiffs would receive some of the property, not specifying how much or what; the other plaintiff testified that the defendant said if the plaintiffs would not contest their father's will she would hold all of the property, including that which their father owned and that which she owned, for the benefit of the plaintiffs.

The record clearly shows that the plaintiff Ida went with the defendant to the state of Texas, and heard an agreement made by the defendant with the said Carson that the home place would go to him if he would come to Oklahoma and assist the defendant in looking after her affairs, at which time the plaintiff Ida never mentioned such a contract as here set up.

The rule is that, in an action of purely equitable cognizance, such as here, if the findings of the trial court are not clearly against the weight of the evidence, the same cannot be disturbed on appeal Depriest et al. v. Welch et al., 70 Okla. 241, 174 Pac. 261; Voris v. Robberts 52 Okla. 671, 153 Pac. 120. This rule precludes our disturbing the finding of the trial court to the effect that there was no contract as pleaded by the plaintiffs.

But it must be noted that the trial court in making its conclusions found that the plaintiffs **were influenced** to abandon the contest of the will by the conversation had with the defendant. The record discloses that on this last-mentioned finding the plaintiffs requested the court as follows:

"The plaintiffs therefore request the court to find as a conclusion of law whether or not the plaintiffs are entitled to equitable relief."

The trial court failed to respond to said request and failed to find whether or not the plaintiffs were entitled to any relief in equity under its said finding.

Plaintiffs insist in their brief that even if there was no contract as they allege, the parties stood in a confidential relation and that the plaintiffs surrendered their right to assert their interest as heirs of their deceased father "by reason of the statements, acts, and conduct of the defendant, by whi h the defendant made the plaintiffs believe that they would receive at her death at least the amount in said property they would have received but for the will. and plaintiffs therefore insist that the defendant should be decreed to hold such interest as plaintiffs would have inherited in the real estate of their deceased father in trust. In support of this contention plaintiffs cite 26 R. C. L. 249; Beckett on Trustees, sections 374 to 376; Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859; Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756; Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811; Stewart v. Harris (Kan.) 77 Pac. 277; Payne v. Payne (Cal.) 170 Pac. 18. From these authorities the plaintiffs deduce:

"* * * That when the parties are in equity and the full subject-matter is before the court, and the facts and attending circumstances have been heard with even a general prayer for relief, a court of equity is not bound only to grant the specific relief prayed for, but will devise means and grant such relief as fully meets the situation of the parties. * * * It is unimportant as to the specific nature of relief prayed for. The important thing is: Are the plaintiffs in error entitled to rel'ef? If so, the court will determine the relief and grant it in such adequate and full form as to protect all the parties."

We think that the record justifies supplementing the last-mentioned finding of the court to the extent that the defendant left the impression upon the minds of the plaintiffs that they would receive at her death much of their father's estate as they would have taken but for the will. Under

these circumstances we are inclined to the view that the defendant dealt with the plaintiffs, the plaintiffs so understanding, on the basis that they would receive as much of the land at her death as they would by a successful contest of the will, and that they executed quitclaim deeds to cure a defect in the probate proceedings relying upon this impression. Having done so, we feel that the defendant cannot be heard to say that the plaintiffs could not have successfully contested the will of their deceased father to the real estate in question, and cannot be heard to say that while she took the legal title she held it other than in trust to the extent of the amount or interest in the same which plaintiffs would have inherited from their father as two of his heirs at law, such interest to be theirs at her death. That they would have been unsuccessful in their contest the defendant is precluded from setting up as a failure of consideration for plaintiffs' action in not contesting the same.

The defendant should have been held to do equity, and that equity under all the facts in this case would have been to decree that the defendant held in trust, the plaintiffs to receive the same at her death, the interest in the real estate which they would have inherited from their deceased father but for the will.

This cause is remanded to the trial court and its judgment and decree herein is directed to be, and is hereby modified as of the date of its entry to this extent: That of the land above described (to wit. 400 acres more or less) the defendant (her executor, the defendant having departed this life pending the appeal in this court and the cause being revived in the name of her executor, James M. Bailey) hold a two-thirds undivided interest in each tract so owned by the said Henry Has'ey at the time of his death for the benefit of the plaintiffs and each plaintiff decreed to own an undivided third interest therein, the other third being owned by the defendant. The half interest in the northeast quarter section 30-13-3, supra, owned by defendant, is in no wise affected hereby.

The interest so decreed the plaintiff Ida is stamped with a lien to the extent of $4,500 for money borrowed from the defendant: her interest in said real property to be relieved therefrom upon the payment and discharge of said indebtedness. In other respects the judgment of the trial court is affirmed.

NICHOLSON. C. J.. and MASON, LESTER, CLARK, and RILEY, JJ., concur.

### Addendum.

BRANSON, V. C. J. In this opinion and judgment filed in this cause November 16, 1926, the last paragraph recites:

"The interest so decreed the plaintiff Ida Haskey is stamped with a lien to the extent of $4,500 for money borrowed from the defendant; her interest in said real property to be relieved therefrom upon the payment and discharge of said indebtedness. In other respects the judgment of the trial court is affirmed."

On a motion filed by the plaintiffs in error to modify the judgment as to this paragraph it is made plainly to appear that the $4,500 mentioned therein was in amount erroneous and should therefore be stricken and in lieu thereof the following substituted:

"$1,368.79 with interest from June 2, 1926, at the rate of 6% per annum."

The said last paragraph of the said opinion is by this addendum modified and corrected to this extent.

NICHOLSON, C. J., and MASON, LESTER, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 39 Cyc. pp. 178, 193; anno. 23 A. L. R. 1502; 26 R. C. L. p. 1203 et seq.; 5 R. C. L. Supp. p. 1445. (2) 4 C. J. p. 897, §2867; p. 900, §2869; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (3) 39 Cyc. p. 169.