O. E. ELLIS, Plaintiff in Error,

v.

Douglas M. BENBROOK et al., Defendants in Error.

No. 39468.

Supreme Court of Oklahoma.

March 27, 1962.

Tom J. Ruble, Taloga, for plaintiff in error.

Landsen & Drum, Beaver, for defendants in error.

BERRY, Justice.

The parties to this appeal will be referred to thus: O. E. Ellis, plaintiff in error, as "plaintiff"; Douglas M. Benbrook, defendant in error, as "defendant"; Temple Benbrook, defendant in error, as "Temple". When referred to collectively herein, the defendants in error will be referred to as "defendants". While C. J. Sharp was named as a defendant in plaintiff's petition and amended petition, he was not served with summons and did not enter an appearance.

In his amended petition, plaintiff alleged in substance that on or about December 1, 1952, the owner of a 480-acre tract of land (hereafter referred to as "tract"), lying in Harper County, Oklahoma, offered to sell him an undivided one-half of the minerals underlying the tract for $2400.00; that being without sufficient funds to purchase the minerals, plaintiff asked defendant if "he (defendant) would go into an arrangement with him to finance the purchase of said interest for the said quoted price and (defendant) agreed that he would do so, upon the following oral agreement: That he (defendant) would take the minerals in his own name, and pay to the (owner) the said sum of $2400.00, for the interest, and that they would hold the same until the same or part thereof could be sold by them and that all rents and profits from oil and gas then upon said interest be applied to the payment of the purchase price, and that the plaintiff and the defendant would share equally in any profit, or any loss therefrom"; that defendant subsequently paid $2400.00 for the minerals and took title to same in the name of defendants; that the minerals had been leased for oil and gas purposes; that defendant and

Temple had received $960.00 as delay rentals paid under subsisting oil and gas lease; that on or about April 11, 1956, C. J. Sharp purchased a ½4th interest in the minerals interest so purchased by plaintiff and defendants; that on or about July 1, 1956, plaintiff offered to pay defendant $720.00 as the balance due on plaintiff's share of the purchase price of one-half the minerals underlying the tract and demanded of defendant a mineral deed covering 5⁄24ths of the minerals; that defendant denied that he had entered into an agreement with plaintiff concerning the minerals and refused to convey any portion of the minerals to plaintiff. Plaintiff prayed that he be adjudged to own a 5⁄24ths interest in the minerals; that the amount owing defendant on the purchase price of said interest be determined; that defendants be directed to convey said interest to him upon his paying his share of the purchase price and for such other and further equitable relief that the facts warranted.

In his answer to plaintiff's petition, defendant admitted that plaintiff requested that he (defendant) purchase one-half of the minerals underlying the tract; that he did so; that it was agreed that plaintiff and defendant "would attempt to turn said mineral interests for a profit and in the event they could be turned for a profit within a period of approximately six months, that the (plaintiff) would be entitled to a reasonable commission upon the sale of said mineral rights"; that he denied that he ever agreed to convey plaintiff any portion of the minerals; that he agreed only to divide any profit realized upon sale of the minerals "within a reasonable period of time of not to exceed six months" from date of purchase.

Temple's answer consisted of a general denial and a specific denial that he entered into a contract with plaintiff relating to the minerals.

Following trial of case to the court as a case of equitable cognizance, judgment was entered for defendants. From order of the trial court denying plaintiff's motion for new trial which was directed to the mentioned judgment, plaintiff perfected this appeal.

The sole issue presented and argued by the parties is whether the judgment is contrary to the evidence and the law applicable thereto.

Plaintiff's testimony tended to bear out the pertinent facts stated in his amended petition. His testimony also tended to show that prior to the alleged agreement in controversy, plaintiff, as an oil and gas lease broker, entered into like agreements with Temple who is defendant's brother; that Temple complied with such agreements; that he did not have an agreement with Temple concerning the minerals in controversy; that under his agreement with defendant, the time within which the minerals should be sold and the profits divided was not fixed; that as of date of trial $1480 had been paid as delay rentals on oil and gas leases covering the 240-acre mineral interest; that the oil and gas lease covering 320 acres of the tract had terminated; that an oil company had offered to pay a bonus of $30.00 an acre for an oil and gas lease covering the 320 acres of minerals; that plaintiff had secured prospective purchasers for a portion of the minerals and that defendant had refused to execute mineral deeds to said purchasers (this was after the lapse of six months from date of alleged agreement); that defendant had promised to "straighten up" the matter but thereafter denied that plaintiff had any interest in the minerals; that plaintiff stood ready and able to pay the balance due on the purchase price of the minerals that was attributable to the 5⁄24ths interest which he claimed.

The testimony of two persons who were employed in plaintiff's office at the time plaintiff entered into the alleged agreement with defendant testified that plaintiff and defendant agreed that the latter would pay for the minerals; that upon sale of the minerals defendant would recover the advanced purchase price and that the profits would be divided.

Temple testified that on several occasions he had entered into agreements with plaintiff of the same general purport of plaintiff's alleged agreement with defendant.

Defendant testified that he and plaintiff reached an agreement to the effect that in the event the 240 acres of minerals were sold within six months of date of purchase, any profits accruing upon resale would be divided equally; that plaintiff failed to obtain a purchaser for the minerals or any portion of same within six months; that he at no time, after the expiration of the six-month period, acknowledged that plaintiff had any interest in the minerals. Defendant testified further that Temple's name was only inserted as a grantee in the mineral deed after the latter had agreed to pay one half the $2400.00 purchase price.

It is clear that the trial court chose to believe defendant's testimony and so believing found and concluded that plaintiff could only have an interest in the minerals or profits accruing in connection with the ownership or sale of same if the minerals were sold within six months from date same were purchased.

In Bunte et al. v. Hasley, 122 Okl. 81, 251 P. 591, 593, this was said:

"(1) It must be conceded, as contended by the plaintiffs, that a court of equity in a property case will by decree establish an oral contract relating to real estate, the result of the establishment of which will be that the real estate be declared to be held in trust for the use and benefit of those with whom the contract was made, but where such contract is alleged to exist solely by reason of oral conversations, the same must be established by evidence clear, unequivocal, and decisive. Miller v. Nanny, 91 Okl. 150, 216 P. 662; Secrest et al. v. Nobles et al., 97 Okl. 277, 223 P. 863; Bernard v. McRay, 89 Okl. 1, 213 P. 82."

After having carefully examined the record in the instant case, we are of the opinion that the evidence fails to satisfy the above quoted pronouncement.

Affirmed.

WILLIAMS C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., dissents.